STATE OF NORTH CAROLINA　　　　FILED IN THE GENERAL COURT OF JUSTICE
COUNTY OF UNION　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
　　　　　　　　　　　　　　　17 DEC 14 PM 1:09 17-CVS-_____ 17CVS03296

YURII KOROTKOV &
IRYNA PAVLOVNA KOROTKOVA　UNION COUNTY, C.S.C.

　　　　　　Plaintiffs　　　　　　　　　　　COMPLAINT

v.　　　　　　　　　　　　　　　　　　　　WITH DEMAND FOR TRIAL BY JURY

SUNTRUST MORTGAGE, INC.

　　　　　　Defendant

**NOW COMES** Plaintiffs, Yurii Korotkov and Iryna Pavlovna Korotova, by and through Counsel, and respectfully pleads to this Court the following

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to N. C. Gen. Stat. § 1-75.4 and 47 U.S.C. §227(b)(3)

2. Venue is proper in this Court pursuant to N. C. Gen. Stat. § 1-82 because the acts and transactions occurred in Union County, North Carolina, Plaintiff resides in Union County, North Carolina and the Defendant transacts business in Union County, North Carolina

## PARTIES

3. Yurii Korotkov and Iryna Pavlovna Korotova, ("Plaintiffs") are individuals and citizens of the State of North Carolina who reside in Union County, North Carolina.

4. Plaintiffs are "consumers" as defined by N.C. Gen. Stat. § 75-50(1).

5. Defendant, SunTrust Mortgage, Inc., was and is a "debt collector" as defined by N.C. Gen. Stat. § 75-50(3).

6. Defendant is a business entity which regularly conducts business nationally, and has its corporate office at 901 Semmes Avenue, Richmond, VA 23224.



EXHIBIT A

7. Defendant can be served through its servicing agent Corporation Service Company 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608

8. At all times relevant, Defendant was engaged in commerce in North Carolina.

9. Defendant was represented on this debt in the Plaintiff's bankruptcy petition by Johnson & Freedman, LLC, 1587 Northeast Expressway, Atlanta, Georgia, 30329.

10. The alleged debt in this matter is a "debt" alleged to be owed as defined by N.C. Gen. Stat. §75-50(2).

11. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes.

## FACTUAL ALLEGATIONS

12. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein

13. The Plaintiffs filed a Voluntary Petition pursuant to Chapter 13 of the United States Bankruptcy Code on June 5, 2009. Debtors subsequently received a standard discharge on December 17, 2014 and their case was closed on April 30, 2015

14. SunTrust Mortgage, Inc. (SunTrust), is a secured creditor in this bankruptcy holding the Note secured on the property located at 3012 Twilight Lane, Indian Trail, North Carolina 28079 (the Subject Property).

15. On or about August 26, 2009, an Order Confirming Chapter 13 Plan was entered by the Court.

16. During the pendency of the bankruptcy case the following took place (per Order entered March 28, 2016, W.B.N.C. 09-31457, Doc. 63):

2

a. On or about September 22, 2009, SunTrust filed a proof of claim which listed pre-petition mortgage arrears as $19,474.60.

b. On or about June 14, 2012, SunTrust filed a Motion for Relief from Stay which was subsequently resolved by the Consent Order entered on or about November 06, 2012.

c. SunTrust filed a Notice of Mortgage Payment on or about April 10, 2014.

d. On or about Oct 29, 2015, Debtors' filed an Ex Parte Motion to Reopen Bankruptcy Case and the Motion in connection to this Notice.

e. The Court entered Order Granting Motion to Reopen Bankruptcy Case on or about October 30, 2015.

f. On or about January 25, 2016, SunTrust filed its Opposition to the Motion.

g. Debtors have returned the following checks previously received from SunTrust: (1) $1,002.00 dated 05/20/15 (Received) (2) $1,002.00 dated 06/18/15 (Received) (3) $1,001.97 dated 07/16/15 (Received) (4) $1,002.00 dated 08/14/15 (Received)

h. SunTrust has stopped payment on the following checks that were previously sent to the Debtors: (1) $1,002.00 dated 10/19/15 (2) $1,002.00 dated 11/23/15.

i. The Parties entered into a consent order which stated: "Upon receipt of the checks from the [Plainiff], SunTrust will bring the [Plaintiff's] mortgage account current through March 2016; SunTrust will waive any foreclosure costs, interests, late fees and property inspection fees.

17. The Plaintiff returned the checks to his attorney to return to SunTrust.

18. The Plaintiff's mortgage account was current and paid up to the date of the consent order March 28, 2016.

3

19. Plaintiffs continued to make payments after the consent order as required in cash, at the branch.
20. SunTrust failed to apply the payments received from Plaintiffs to the mortgage and continued to proceed to collect a debt that was not owed.
21. SunTrust continued to send letters and make phone calls to Plaintiffs cell phones in an effort to collect the debt despite the Plaintiffs being represented by an attorney in this matter.
22. SunTrust continued to charge fees to the plaintiff account for "inspection fees" that were not authorized due to the fact that the mortgage was current.
23. Plaintiffs contacted SunTrust numerous times to dispute the fees owed and were given varying responses about why the account was in foreclosure and the debts were owed.
24. SunTrust would send "property inspectors" to the home at a minimum of once a month to take pictures and give documents to the home owners.
25. Despite the property inspectors being told that the debt was current, the inspectors spoke to neighbors, specifically the children of the Plaintiffs' neighbors, and told them that the Plaintiffs were losing their home for failure to make their payments, or words to that effect.
26. This caused considerable embarrassment, stress and emotional pain to the Plaintiffs and their children.
27. On May 5, 2016, while the Korotkovs were receiving guests for Mr. Korotkov's birthday party, an agent of Suntrust came to the Korotkov's front door and posted a delinquency notice to the Plaintiff's door.
28. This caused great embarrassment and ruined what should have been a happy celebration in the Plaintiff's home.

4

29. During the communications with the Plaintiffs, the Defendant failed to advise the Plaintiffs that the communications were an attempt to collect a debt.

30. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the damages to the Plaintiffs that are outlined more fully above.

31. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiffs' rights under the law and with the purpose of injuring and coercing Plaintiffs to pay a discharged debt.

## VIOLATIONS OF N. C. Gen. Stat. § 75-50, *et seq.*

32. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

33. The Defendant continued to call and send letters to the Plaintiffs claiming the home was in foreclosure, despite payments being made as required by Plaintiffs.

34. The Defendant sent property inspectors to the home to trespass on the property, take photographs, even when told to leave and stated that they needed to contact the bank regarding the mortgage.

35. The property inspector also would state that the Plaintiffs "need to pay their bills" to other residents of the neighborhood and children of the Plaintiffs.

36. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-51(3).

37. The Defendant stated the home was in foreclosure and the Plaintiffs would be forced to leave unless payment was made. Plaintiffs had made all required payments and the loan was current at that point.

38. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-51(6), (7) and (8).

39. The collection letters and collection calls made to the Plaintiffs by the Defendant did not state the fact that each communication was an attempt to collect a debt.

40. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-52(2).

41. The Defendant sent property inspectors to Plaintiffs' residence who, while there, trespassed on Plaintiffs' land, spoke to the Plaintiffs' children and neighbors about the debts allegedly owed, and left correspondence for the Plaintiffs around the property.

42. This behavior constitutes a general violation of N. C. Gen. Stat. § 75-53.

43. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-53(1)

44. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-53(2)

45. Defendant contacted the Plaintiffs repeatedly to discuss "foreclosure", even though the Plaintiffs had made all payments due at that point and told the Defendant the same.

46. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-54(4).

47. Defendant continued to contact the Plaintiffs when it knew the Plaintiffs were represented by an attorney on that alleged debt.

48. The Defendant participated in the Plaintiffs' bankruptcy by filing proofs of claim on the alleged debt.

49. Such action demonstrates clearly that the Defendant knew that the Plaintiffs were represented on the alleged debt.

50. This behavior constitutes a general violation of N.C. Gen. Stat. § 75-55

51. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-55(3)

52. As a result of Defendant's violations of the NCDCA pursuant to N.C. Gen. Stat. § 75-56(a) Plaintiffs are entitled to actual damages, statutory damages in an amount not less than

$500.00 but no greater than $4,000.00 per violation and punitive damages as well as reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

## VIOLATIONS OF 47 U.S.C. § 227, *et seq.*

53. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

54. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991). The purpose of the TCPA is clearly to act as a deterrent to such harassment by the imposition of stiff penalties awarded directly to the successful Plaintiff.

55. The Defendant used an automated telephonic dialing system or prerecorded or artificial voice to make collection calls to the Plaintiffs' cellular telephone.

56. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C § 227 (b)(1)(A).

57. The Plaintiffs did not give the Defendant express permission to do so, as required by the TCPA.

58. If it is determined that the Plaintiffs did give such express permission, that permission was revoked by the Plaintiffs when they told the Defendant not to call them.

59. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *See, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt.*, LP, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to

receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

60. Any express permission was also revoked when the Plaintiffs' attorney notified the Defendant that it must contact him as the Plaintiffs' representative on the alleged debt.

61. Defendant willfully or knowingly violated the TCPA by continuing to place calls to Plaintiff's cellular telephone after being told not to do so.

62. As a result of Defendant's violations of the TCPA, Plaintiffs are entitled to actual damages, in addition to statutory damages, in the amount of $500.00 pursuant to 47 U.S.C. 227(b)(3)(B). Under this provision of the TCPA, given the willful and intentional violation of the TCPA by the Defendant, the Plaintiff respectfully requests the jury treble the award pursuant to 47 U.S.C. § 227(b)(3)(C).

## DEMAND FOR JURY TRIAL

63. Plaintiffs exercise their right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiffs respectfully request the following relief from the Court:

1. That Plaintiffs have a trial by jury upon all issues so triable;
2. That Plaintiffs be awarded damages against the Defendant in an amount to be determined at trial that will fairly and reasonably compensate them for the emotional distress, aggravation, annoyance, humiliation, marital strife and inconvenience suffered as a result of the Defendant's unlawful acts;
3. That Plaintiffs be awarded actual damages to be determined at trial and statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. §75-56(a);
4. That Plaintiffs be awarded costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16.1 and 75-56;

5. That the Plaintiffs be awarded maximum statutory damages of $1,500 per violation for intentional violation of 47 U.S.C. § 227, *et seq.*, pursuant to 47 U.S.C. § 227(b)(3)(B) and (C); and

6. That Plaintiffs be awarded such further and general relief that this Court may deem just, equitable and proper.

**TODAY** is December 12, 2017:

**COLLUM & PERRY**

M. Shane Perry
NC Bar No. 35498
*Attorney for Plaintiff*
109 W. Statesville Ave., Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile: 704-663-4178

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| UNION COUNTY | 17 CVS 3296 |

YURI KOROTKOV & IRYNA PAVLOVNA KOROTKOVA,

    Plaintiffs,

v.

SUNTRUST MORTGAGE, INC.,

    Defendants.

**NOTICE OF FILING OF**
**NOTICE OF REMOVAL**

Defendant SunTrust Mortgage, Inc. hereby gives notice that this matter has been removed to the United States District Court for the Western District of North Carolina as authorized by 28 U.S.C. §§ 1441 and 1446. Defendant's Notice of Removal of this action to that court is based upon federal question jurisdiction. A copy of the Notice of Removal is hereby filed with the above-named Clerk of Court, in accordance with the provisions of 28 U.S.C. § 1446(d), and a copy has been served upon the plaintiffs in this matter by mailing the same to their attorney of record.

Respectfully submitted this the 19th day of January 2018.

                                     WILLIAMS MULLEN

                                     By: /s/Elizabeth C. Stone
                                     Elizabeth C. Stone
                                     N.C. State Bar No. 36690
                                     P.O. Box 1000
                                     Raleigh, NC 27602
                                     Telephone: (919) 981-4000
                                     Fax: (919) 981-4300
                                     E-mail: ecstone@williamsmullen.com
                                     *Attorney for Defendants SunTrust Mortgage, Inc.*



EXHIBIT B

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing or attached document was served upon all parties of record by U.S. Mail at the address indicated below on this the 19th day of January, 2018.

**SERVED:**

M. Shane Perry
109 W. Statesville Ave.
Mooresville, NC 28115
*Attorney for Plaintiffs*

WILLIAMS MULLEN

By: /s/Elizabeth C. Stone
Elizabeth C. Stone
N.C. State Bar No. 36690
P.O. Box 1000
Raleigh, NC 27602
Telephone: (919) 981-4000
Fax: (919) 981-4300
E-mail: ecstone@williamsmullen.com
*Attorneys for Defendant SunTrust Mortgage, Inc.*